You can proceed, Mr. Gallo. May it please the Court, I'm Michael Gallo here for Clinton-Mueck is the way he pronounces his last name. I have seated seven minutes of my time to the EEOC who'd like to speak today and I'm going to reserve some time for rebuttal, so I'm going to try to speak quickly. The first issue I'd like to talk about is the actual issue of a disability, because I think that's the threshold issue that deals with the disability discrimination claim, the reasonable accommodation claim, and even the retaliation claim. This Court has recognized repeatedly in cases like Carmona v. Southwest Airlines, the Cannon v. Jacob Field Services, that the ADA Amendments Act was a game changer. It completely changed this area of the law. That's where Congress had said, you know what, the courts are not doing this right. They're holding these plaintiffs to a, employees to too high a standard. So it lowered the bar in terms of what a substantial limitation is. It also said, now you look and see how do they compare in the performance of major life activities compared to the average person in the country or in the community. And importantly for this case, it said an episodic disability. Fourteen years and we've never sort of rescinded Birch ourselves. Isn't that sort of remarkable? I think so, because there's been district courts that have come around since then and they all, it's the, not the whole Birch case, but this piece of it. It's like the poster child and they throw you out on this. So this needs to be addressed and I hope that the Court can address this issue in this particular, because this is. But you're not saying any alcoholic is always per se disabled under the ADA. No, we're not saying that. You're just saying as you alleged here. Right. As he describes in his declaration, he was bad. And what he suffers from, I'm sure like many alcoholics or people with alcohol, the politically correct term is alcohol use disorder, but what we used to call alcoholism. He's functioning part of the time. But when he gets on a drunk, he's on a drunk. And he, you know, it's raging. I don't know how else to put it other than colloquial terms like that. I mean, he can't care for himself. He drinks to the point that he passes out or throws up. These cravings are so intense that he gets them again and you start this cycle all over again. And for him, because he had this workplace injury several months, he had been on workplace injury leave for quite some time, several months. Well, he was at home. So guess what? You know, it was, he didn't even have work to break it up. So I think under these facts, he's very disabled. I mean, he's, you know, let's say you win on that. The difficulty for me is where does he request an ADA accommodation as opposed to say, I have a DUI. I've got all sorts of problems. I have to bring my breathalyzer to work. I promise you I can work, but I also can't do my night shifts. And it would then be hard for me. I mean, what's the best case that says that type of honest disclosure by an employee puts an employer on notice that what he's really saying is I have an ADA disability? I think there's a dearth of cases on that issue at all because, believe me, I've looked. I mean, that's an area that's just, I guess this is unusual in a sense. But I think that if you take his conversations that he had with Pavelic, Kevin Pavelic, who was a supervisor and who under their policy was a person, could take reasonable accommodation requests. He tells him the first time in March, hey, I got this, you know, I got arrested. I've got a drinking problem. He doesn't mention that to the point I'm an alcoholic yet, but he says I've got a drinking problem. It's affecting me. I want to get help. Then on May the 17th, I think it is, he goes back to him and he says I'm an alcoholic. I recognize I'm an alcoholic. By this time he's been to the doctor. He's started AA by that point. This is affecting every aspect of my life, and I personally need to. Except for my work. No, including work. I thought he was insisting throughout he could work. He could. He could. But what he told Pavelic was this is including, it's affecting every aspect of my life, including work. Okay. So Pavelic was very sympathetic to him at the time. Yeah. Now, he did not ask for at the time a shift slot. That came later. What he was asking for was time off. We contend that that, oh, and he gave him the court order, which says in big bold letters intensive outpatient substance abuse program. Right. So, I mean, that's the whole point of it, it would seem to me, of one of these programs. The only difference between this case and any other case that you may confront, it seems to me, is that it is court ordered. Because the whole purpose of this program, and the therapist, the counselor, Mr. Woodley, in his declaration, he talks about this. The whole point of this is so they can get treatment. For people who have these repetitive drinking, or, you know, alcohol offenses, they require them to go through this program. And it's not like defensive driving, check the box kind of things, you've got a ticket. This is, if you read Mr. Woodley's declaration, this is a substantive deal. I mean, this is, in his words, it is designed to take you from a life of addiction to a life of recovery. Part of the problem for me is the district court stopped the disability. And I'm quite persuaded that you're right, that there is a disability here, and it was alleged. But then, don't we still have to say the reason they terminated your client was pretext? Yes, okay, so now we're back to the, yes, so that's, we've got a reasonable accommodation claim, which we've been talking about. And there is a straight up disparate treatment claim, disability discrimination claim. And I think there is an abundance of evidence from which a court, or excuse me, a jury could conclude that he was fired because of his medical condition. Instead of because he's serving a criminal condition. Well, absolutely. Let's start with the fact that he recorded his termination meeting. And you have in the record the certified transcript of that. It's only a few pages. It's very short. And they tell him, this is the first time the guys even talked to the HR guy. And they tell him, we're firing you. It's like they're reading off a script. I don't know what they were, but it sure sounds like that. And he says, we're firing you because of the conflict in the schedule. That's it. That's the reason. Not because, you know, you've got a DUI. That's the reason. Now, bear in mind, Your Honor, that what we're talking about here in terms of an accommodation is only portions of four shifts over 90 days. That's it. And there's all kinds of evidence in the record from my own client who had missed work in the past. Like, for example, he got a spider bite one time and he had a, you know, they cover people on quick notice or no notice. And there's testimony from his former manager to that effect, from himself. And even, excuse me, Pavelic, who says, yeah, you know, sometimes I fit. So lead operator, relief operator, pipeline operator, shift swap. I guess I'm going to ask you again, what's your best evidence that they fired him on account of his disability as opposed to he has a straight court-ordered conflict? Oh, because comparative evidence, because of the way they've treated other people in the past, the fact that he could have easily been accommodated. I think that gets us there. Let me ask you, are you saying those are violations themselves or they're circumstantial evidence of pretext? It does seem to me that there were conflicts in his schedule. How the schedule would be worked out had not been resolved. Those are fact questions. Those can get people fired at a time who don't have alcohol problems. So it seems to me this case has an awful lot in it that says enough was presented to the employer that there's some duty on the employer to do more. Yes, sir. That's absolutely right, and I'd like to address that issue because you've run out of time and you've generously given to the amicus, the right. So let's see what she has to say. Thank you. Good morning. May it please the court, Gail Coleman for the Equal Employment Opportunity Commission. With respect to the employer's obligations, you are absolutely right. When an employee requests a reasonable accommodation for a disability, there is an interactive process requirement. The employer cannot simply say, oh, court order, court order, and put blinders on and say this has nothing to do with the disability. I don't want to know anymore. I'm not going to ask anything. Ms. Coleman, I know the EEOC would see it that way and it makes perfect sense. I'm trying to see where the law to support that is. This is a sympathetic case with an alcohol problem that's severe, but it's almost like the employer was not engaged either because of what the plaintiff was doing or because of their own shortcomings. But the linking of the employer to its obligations is what I am concerned about. So what invoked these obligations? Is it merely because they were aware he had an alcohol problem? No. In order to request a reasonable accommodation, all that an employee has to do is indicate that they need a workplace adjustment for a medical condition-related reason. And Mr. Mick did that. He indicated, I know I'm an alcoholic. I have problems. It is destroying my life. I need to get treatment. I need to get this treatment personally. I know I need it to save my life. So what he was doing was he was saying, I have this medical condition problem. I need time off for this treatment. The fact that it was ordered by a court really doesn't matter. The ADA has no requirement that an employee's underlining reasoning or thought process or what's prompting them to need the treatment, that's not part of the ADA. He's requested time off for treatment. And at that point, the employer, if they're not sure if he really has a disability, the interactive process requirement has kicked in. The employer is entitled to say, I don't really get it. Show me more. They can ask for a doctor's note. They can ask for more proof. And then Mick would be required to provide it. What they can't do is pretend they don't know that there's an ADA issue here. It's a bright-line position the EEOC is taking. You're saying the court order doesn't matter. And in your brief, you said his motivation for asking doesn't matter. Correct. That's very hard for me to accept because the context, the employer is clearly, in this case in particular, accommodated a shift switch, sent around the e-mail. And so it really does matter what is the context for us to be able to decide was this a request for a health accommodation or is an employee simply saying, I've had troubles with the law and I can't come to work because of it? At which point, that wouldn't be, what? The distinction would be if an employee comes to the employer and says, I've had trouble with the law. I'm going to be in jail for three days. I need time off. The employer doesn't have to do that. That has, the ADA says nothing about consequences for criminal misconduct. Everybody should have consequences for criminal misconduct and the employer doesn't have to facilitate that. But my point is an employer doesn't want to pry into health reasons. So it really does matter what the motivation is. If an employee comes and says, I have an irreconcilable conflict with my night shift, and then they intimate that it's health-related, what would really help me would be any circuit authority, fifth or otherwise, I think the argument you're making is there's a functional equivalent to a request for accommodation of a disability packaged inside a, I've gotten in problems with the law and I can't do my job. No, I don't think that's what we're saying. What we're saying, those aren't the facts here. What we're saying is under these facts, where Mick came and said, I have this problem with the law because I'm an alcoholic and because it is destroying my life and I have this DWI and they're sending me to treatment and I personally need this treatment to get my life back on track. That is more than just coming to an employer and saying, I have a problem with the law. I need time off. What's the best case? The best case? The best case that is a context where an employee is acknowledging something that wouldn't get ADA protection as something that he has to do, but yours that wouldn't, i.e. just purely a criminal condition he's got to fulfill, doesn't implicate the ADA. So instead what you're saying is, well, the larger penumbra revealed enough, they should have understood it to be something that qualifies for ADA protection. What's the case that explains that? Well, in Sears from the Seventh Circuit, for example, the court said that if the employee has raised enough to, it's ambiguous, but there could be a disability in there, then the employer has an obligation to probe that. Okay. That's exactly what I was looking for. Okay. And as I said, the fact that there was a criminal order here really is irrelevant to the ADA. The fact that some other criminal might also want time off or that somebody might need time off for treatment but they're not actually disabled does not matter. The ADA only kicks in for the person with a disability. So, for example, if somebody with a disability came to the employer and said, I need a schedule shift for chemotherapy, the ADA would invoke the process, the interactive process. If a coworker came to the employer and said, I need time off, or I need a schedule shift to pick up my child early, the ADA has nothing to say about that. So whereas the employer might be required to grant an accommodation to the disabled employee, that doesn't change its lack of obligation to accommodate non-disabled employees. And your best case, preferably fifth, this wasn't sufficient interactive process when they emailed the whole company saying, can someone help him out at night? So that wasn't enough. The employee is not responsible solely for identifying the reasonable accommodation that will work. That's the nature of an interactive process. So Mr. Mick said, what about shift swaps? And the company said, well, we'll look at shift swaps. We're suspending you for a week. And then the next thing he heard was, now you're fired. Nobody came back to him and engaged in the interactive process. There was no discussion of, okay, shift swaps don't work. Let's look at alternatives. What about having the supervisor come and fill in for three hours? We've done that in the past for other employees. What about having the lead operator? What about, in fact, they've even brought in a former employee sometimes. If somebody needs to go on sick leave in an unanticipated way, if somebody needs vacation leave, they find a way to cover it. They actually said they would have given him vacation leave if he had asked, and he testified nobody told me that or I would have taken it. They said that if their own employee assistance program had referred him for substance abuse counseling, they would have given him the leave. They would have covered it. So that shows that they could have covered it, but none of this came up in the interactive process because there was no interactive process. All right, Ms. Coleman. Thank you. Thank you very much. May it please the Court. Good morning. My name is Luke McDowell, and along with Co-Counsel Kelly Edwards, we represent the Defendant Appellee in this case, LaGrange Acquisition, L.P. Your Honors, this is a case where an employee lost his job because he incurred criminal charges that resulted in criminal sanctions of probation that interfered with his workplace. The legal issues in this case really boil down to whether or not the law mandates that employers excuse that sort of workplace interference when the employee claims that that workplace interference is caused by an underlying condition of alcoholism. The District Court properly concluded that the answer to that question is no and granted summary judgment. We ask this Court to affirm. Your Honors. For the reason the District Court stated? Your Honors, it's de novo review, so if the Court were to reach a different reasoning for the same conclusion, that would be fine as well. We think the District Court's reasoning. What's your recommendation? Your Honors, the District Court properly concluded that Mr. Meek was not disabled as a result of his alleged disability of alcoholism. But on top of that, there are multiple reasons why each of his claims fail. And in this case, Your Honor, I think it's important to recognize there are three separate claims with distinct legal elements. Despite the fact that the appellant continually conflates them and argues that the failure to help him by accommodating him necessarily means that he wins under discrimination claim, retaliation claim, and failure to accommodate. That is just not the law. I would also like to recognize a couple of key facts that are important for the timeline of the events in this case, Your Honors. On March 6th of 2019, Mr. Meek informed LaGrange that he had been charged with his third DWI. Mr. Meek alleges that he informed his manager at that time that he had a drinking problem. But LaGrange did not terminate Mr. Meek's employment in March of 2019, nor in April, nor in May. Instead, they asked Mr. Meek to come back and tell them what the results were of his upcoming court hearing. On May 17th of 2019, Mr. Meek called Mr. Pavlik and informed him that his criminal probation had been extended and there were different terms of his probation that would interfere with the workplace, including that he had to carry a breathalyzer with him to work, he had to carry one in his truck and blow into those devices during work hours, and that he had to comply with this class schedule that would conflict with his work schedule. After reviewing the situation, ultimately LaGrange terminated Mr. Meek's employment in June of 2019. Turning to the disability discrimination claims, Your Honor, this claim fails for three reasons. The first is because Meek was not disabled within the meaning of the law. In order to prove a disability under the ADA, the plaintiff must suffer a substantial impairment of a major life activity. And as this court recognized in Birch, there are no per se disabilities, including alcoholism. In this case, Meek argues that alcoholism affected his ability to concentrate and to think, importantly, while he's intoxicated. But proof that he was limited while he was intoxicated does not prove that alcoholism itself, the condition, was actually substantially limiting. What it proves is that his craving for alcohol caused him to want to go on binge drinking. Binge drinking then caused him to become intoxicated and the intoxication limited him, not the condition itself. Because as Meek describes it in his opening... You heard plaintiff at the outset saying they aren't arguing it's per se a disability. That's correct, Your Honor. Did you argue below or did the district court sua sponte raise the issue that it doesn't affect his major life activities? We argued that, Your Honor. Relying on the case law, that alcoholism itself does not, unless there's specific evidence that it's substantially limiting, outside of the times when you're intoxicated. Because as this court recognized in Birch, overindulgent social drinkers also go on drinking binges and become impaired. There's no difference between an intoxicated average person in the population and Mr. Meek's condition. The only thing he argues is that alcoholism causes him to want to crave alcohol. But craving alcohol itself does not substantially limit him. As we pointed out, Mr. Meek concedes that he was able to work his work schedules and never interfered with his work at all. But you agree that to be disabled doesn't have to interfere with work. That's correct, Your Honor. And he's alleged that it virtually knocked him out completely from all activities, couldn't even clean his house or anything. What's the case that says that's not substantially interfering with major life activity? What's your best case? Those allegations. Your Honor, the Birch case talks about why when you're intoxicated. I'm not asking what case talks about that. I'm asking what's your best case? Put Birch aside. The allegations here would not be ones that suffice to create a triable issue as to major life activity impairment. The Moore v. Centralized Management Services case in 2019 that was affirmed on appeal to this Court in 2020 talks about how the plaintiff said he was drunk from, you know, dawn up to dusk, that he was always intoxicated, and that it affected his ability to work, which was not the case here. And even in that case, the district court held that this employee was not disabled under the meaning of the law. Well, okay, under the meaning of the law. So that means you're defending Birch that episodic impairments, incapacitations can't qualify? No, Your Honor. And that's the distinction. Because in the Birch case, that was a part of the rationale for the case, but it was not the holding. One of the rationales was that it was not a permanent impairment. We know that non-permanent impairments can be disabling under the ADA as amended. So Birch is wrong as to that statement? With respect to that rationale, that's correct, Your Honor. But the holding that proving that your intoxication is limiting is not enough because the average social drinker is also incapacitated when they are drunk, and that's the main point. But, Your Honors, even if the court were inclined to find that Meek had proven that he was disabled under the ADA, that is not dispositive. That is the first element of the prima facie case for those three separate claims I talked about. Counsel, it seems to me your position basically is even when he was drinking, as opposed to perhaps hopefully his remission or whatever right now it was during the latest briefing, that so long as it was not affecting him at work, it's not a disability. You had an exchange with my colleague just a few minutes ago, which I think you did not agree with that. But isn't that really the reasoning of Birch that you're relying on, that so long as his drunkenness is not doing his work schedule, that he's more or less thinking clearly when he's at work, then it's not a disability under the ADA? No, Your Honor, I wouldn't say that because that's not the entirety of the argument. It's not just that. That's just one critical fact. Well, let me read. Birch has been much maligned. Judge Garwood was a careful writer, at least. There are some things that are not quite so dramatic in Birch, contrary to what the plaintiffs think is the proper law. It says, Birch produced no evidence that the effects of his alcoholism were qualitatively different than those achieved by an overindulging social drinker. Temporary impairment, unpleasant morning, fine thereafter. Also, his alcoholism, he offered no evidence that he suffered from any substantially limiting impairment of significant duration. It seems to me that Birch is not at all, and what it's saying wasn't shown in that case is actually what's been shown in this case, of how significant this fellow's drinking was and how it affected him for extensive periods of time far more than somebody who indulges too much one night. If anything, I think Birch somewhat helps the plaintiff. Your Honor, our argument is that Meek's evidence is basically the same, that he went on binge drinking episodes, and that when he was intoxicated because he drank, he was impaired. And under the logic of Birch, that's not a disability because people who don't have alcoholism who drink too much are likewise impaired, and that's the point, I think. But even if the court were to find that Birch is inconsistent, or even supports the plaintiff's argument in this case, his claim still fell for numerous other reasons. First, Meek was not terminated on account of his alcoholism. I would cite the court to the Kitchen v. BASF case, the Fifth Circuit decision in 2020, very similar to this case, in which an employee was terminated because he showed up at work and failed an alcohol test. The plaintiff contended there was a causal connection between his termination and his alcoholism because his alcoholism caused him to show up to work intoxicated. The court completely rejected that line of thinking and said, no, in this case, the employer is terminating you for the misconduct. That doesn't mean they're terminating you because you have a condition. The same thing here. The employer terminated this employee not because he was an alcoholic. There is no evidence in the record of any discriminatory animus against him because he claimed he was an alcoholic. Instead, it was because of the work conflict, and that's very clear from— Can I also respond to the interactive process discussion that we've had with counsel for the EEOC and perhaps also Mr. Galo? It does seem to me, and that's a real question in my mind, about whether enough was done here to start that process. Why don't you give me your take on that? Yes, Your Honor. That falls under the reasonable accommodation claim, which is the second claim. And before an employer has an obligation to engage in the interactive process, it's incumbent upon the employee to make a clear request for a disability accommodation. Not an accommodation— Those are magic words. I mean, the Seventh Circuit case, maybe Sears, I mean, I do think that probably is the law unless you can tell us contrary Fifth Circuit authority. A company, an employer is obligated to follow the law. That does mean being educated in the law, and that includes the ADA. The federal government has imposed an awful lot of obligations, but they're there. And if something is occurring that would alert a reasonable employer that we're talking in ADA terms, then it's on the ADA to start the process. Tell me if I'm wrong, and if not, then why wasn't that enough already in this case to have started that process? Your Honor, it's not our argument that Mr. Meek did not use the magic words. What we're saying is that the communication that he gave to his employer was not sufficient to put them on notice he was requesting a disability accommodation. He's trying to connect those dots now in hindsight, now that he has a lawyer and has a lawsuit, to say what I was really asking for was disability-related. When the context of the conversation is crystal clear, he was talking about his criminal probation and the terms of his criminal probation. Are you familiar with the Sears case? I'm not, Your Honor. Do you accept the proposition of laws described by EEOC that once it ambiguously touches on health and disability, it's the employer's duty to prove? No, Your Honor, I don't. I'm not aware of any Fifth Circuit case that has ever held that. In fact, the case law that we cited in our brief talks about how the fact it's the employee's obligation to make it clear that they're requesting a disability accommodation before it triggers the interactive process. And your best case in your brief that said that? Your Honor, the Taylor v. Principal Financial Group case from this court in 1996 indicated that particularly in the case of mental disabilities, where it's not always clear that someone has a disability, a medical condition, and they're requesting accommodations for it, the employee has to be clear about that because otherwise employers aren't on notice to start triggering those processes. In addition, Your Honor, you can do a simple vacuum test to prove what he was asking here. Let's assume that Mr. Meek was not alcoholic at all. He had no diagnosis of alcoholism. Would he still have needed to request the accommodation for his work schedule? The answer is yes because he wasn't asking for it because of a need for an accommodation for a disability. He was asking his employer to accommodate his criminal probation, which was what was conflicting with his employment. At the end of the day, what was impacting the workplace was not alcoholism. It was Mr. Meek's criminal probation. But the two aren't exclusive, right? Your position isn't that any time there's a court-ordered condition that conflicts with work, whether or not it relates to a recognized disability, the employer doesn't have an obligation? That's not your position, right? No, Your Honor. We wouldn't be so stark like that. But we are talking about the context. Why was it? For what conduct was he on probation for? For DWI, Your Honor. Drinking alcohol? Correct, Your Honor. This was a multiple time, so his criminal probation was actually extended this time because of his third. That resulted in the criminal sanctions, including the substance abuse classes. Your Honor, there's a distinct difference between requesting an accommodation for voluntarily to seek rehabilitation for alcoholism and the situation we have here where an employee is coming to his employer and saying, I got a DWI, I have a court date, they're going to extend my probation, here's the terms of my probation. All of the emails in this case, when you read them, prove that what the employer was thinking about was the impact of that criminal probation on the workplace. They weren't thinking about this as a disability because the employee wasn't even thinking about it as a disability. Nowhere in his communications does he say, I'm disabled, I need a medical issue. He didn't present a medical note. Nothing that would trigger that sort of thing. And in those cases, the courts have continually held there is no request for an accommodation under these circumstances. I would point the court to the Zenor v. El Paso case from the Fifth Circuit in 1999 that said just because someone says they're addicted to drugs, for example, doesn't mean an employer is on notice that that person is disabled under the law because we don't make those sorts of leaps of logic. I just want to, I'm sorry, just for my sake, when you cite cases, can I assume they're all in your brief? Yes, Your Honor, they are. So the kitchen decision was in your brief too? Correct, Your Honor. Thank you. We also cited the McElwain v. Boeing case from the Western District of Washington in 2017, very similar to this case, where an employee was sentenced to a DWI and jail time and asked specifically that his employer execute work release paperwork so he could continue working. Despite the fact that the employer had done that for others, it refused to do it in that case. He was then incarcerated and terminated for absenteeism. The district court held that was not a request for disability accommodation. That was a request to avoid a criminal sanction. Very similarly here, what was being requested is that the employer accommodate a criminal sanction, and therefore it's not a request for reasonable accommodation. It never triggered the interactive process obligations and did not result in a failure to accommodate. If we did find that it was sufficiently a request because he had articulated that it was health-related, then would you be arguing that the email asking all employees could someone cover is somehow sufficient under any law for sufficient interactive process? Yes, Your Honor, because what the employer did was work with the employee to figure out a way around the problem. They asked for other people to volunteer to cover his shifts. One email. Excuse me? One email. Correct, although there were other conversations. Pavlik went and talked to one of the employees who Mr. Meek had found who would cover some of the shifts and confirmed that. That's correct. So the employer did more than just— I shift and nobody volunteered for it. That's exactly right, Your Honor. But it was only 12 hours over three months, correct? Yes, Your Honor. I think that point actually proves our point because this isn't a case where we're arguing that it was impossible to accommodate this person. We're not saying that. We're saying it wasn't even a request for accommodation to begin with. They weren't thinking about this in those terms. They heard that he had these criminal issues. They allowed him an opportunity to try to resolve that conflict. When it wasn't resolved, they terminated his employment. And that is critical for all three of the claims in this case, Your Honor. The reason they terminated him is not because he's an alcoholic, so his discrimination claim fails. They didn't fail to accommodate because it wasn't a request for disability accommodation to begin with, so the failure to accommodate claim fails. And because they terminated him because of this work conflict, they also weren't retaliating against him for just asking for any sort of accommodation. That critical fact makes all three of his claims fail. But before, you were discussing this earlier. You had a good summary there. Let me ask you, if you don't accept, and you're not familiar with the case, and so it's hard to know exactly from your viewpoint when you wouldn't accept, what would you say needed to be done by the plaintiff to have started the interactive process? Short of actually saying here's the citations, the ADA, here's the subpart. Yes, Your Honor. What would he have had to do, and if you have any case law to support that that is required? Yes, Your Honor. The employee's obligation is to make clear they're requesting accommodation for a medical disability. Right. So if he came to his employer and said I have- Accommodation, he doesn't usually have to use that word, maybe not even disability. I'm an alcoholic. I need some time to deal with this. So what does he need to add, because he said both of those. What would he have needed to say in addition to that? He would have had to show his employer that the context of his request was not in relation to this criminal probation issue. If he came to his employer and said I'm an alcoholic, I've been treated for my condition, they're recommending I do an inpatient rehabilitation, then we'd be talking about a situation where the employer is probably on notice of a disability and a need for a disability accommodation. As Judge Higginson mentioned earlier, the context in this case is key. The other thing that I think we're forgetting is that the flexibility of the situation was destroyed because there wasn't an interactive process on plaintiff's side either. He had no flexibility because the criminal court wasn't giving him flexibility. He had to attend those classes as a criminal sanction. If we're talking about it in another context where someone is seeking a disability accommodation, there would perhaps be that flexibility. An employee in my example coming to work saying I need to go to inpatient rehab because my doctor is recommending it, there could be some flexibility to figure out when he could go in that wouldn't conflict with the work schedule and so forth. Well, the flexibility here that's been talked about by the plaintiffs is could vacation time have been taken? Were there other ways to deal with the failure of him to be present for those 12 hours? It seems like there's flexible responses even if not a change in the court date or the court order times that he had to show up someplace else. Respectfully, Your Honor, I don't think it's flexible because what he was demanding is that the company figure out a way to cover all those shifts. However they did it, it would require someone else doing it. He didn't have that flexibility because he was court ordered as a criminal sanction to do it. If it were a voluntary situation where he's just seeking rehab for a medical condition, it would probably be different. The irony is that I take it the court order, that's not in the record? The court order is in the record, Your Honor, yes. Because usually that's a rehabilitative effort. The court is saying go to Alcohol Anonymous, get counseling. The last thing a court in that situation wants to do is cause him to lose his employment. Your Honor, I don't think there's anything in the record that indicates the court even had any idea this man had alcoholism or had any medical condition. It's literally in a list of other terms for criminal probation. And they were added to it because his criminal probation was being extended as a result of another criminal violation. So, Your Honor, I don't think that we have anything in the record to suggest this was therapeutic. And even if we did, none of that was brought to the attention of the employer saying I have to go to these because the court wants me to treat my alcoholism. That's not what's in the record. It's all about this criminal sanction. And that's why that context is critical. If we put the onus on employers to figure this out, consider scenarios where an employee says I've just been arrested for domestic violence. And the court is ordering me to anger management classes. Employers certainly don't have the obligation to go figure out if there's some underlying medical condition that would warrant an accommodation in that case either. I see I'm out of time. May I have a moment to conclude, Your Honors? You can have a little bit of time. Your Honor, we would just ask that the court affirm the district court's grant of summary judgment in this case on all three issues. Thank you. Thank you. Thank you, Your Honor. Judge Higginson, you had asked about cases, about what case. It's not a Whitehorse case. And it is cited repeatedly in our brief and I think everybody else's brief. But the Chevron case, it seems to me, this Court's opinion in Chevron is extreme. Not the Chevron. No, sir. I'm sorry. EEOC versus Chevron. Not the Chevron. But that's a very important case on a couple of different things. Number one, it talks about the interactive process and what that duty involves. And it cites some of the cases, the earlier Fifth Circuit cases. The Fifth Circuit case law on interactive process is very well developed. There's a case called Cotrera. I think it's cited in Chevron itself. But the idea of it that we get from Chevron and its precedents are that it's not a be-all, end-all. It's not, hey, I want, you know, I want this time off on these particular days. And then the employer says, oh, no, we can't do it. There's a give and take. And it may and it recognizes that there may be failures in that interactive process that require the parties to keep working at it, to come to some resolution that gets everybody taken care of. That's the whole point of the interactive process. I think that's clear from this Court's precedents in that regard. And that's what didn't happen here. And just to add what the EEOC said, I think looking at this case from the interactive process perspective is very, very important because Mr. Mick goes to the supervisor and he says, I need this time off. He says, I'll get back to you on these particular days that I need. And he does, and he comes back to him and he says that his co-worker was willing to cover for him. Actually, his testimony was the co-worker was willing to cover the whole thing, all the time that he needed. And remember, it was very little time because of the seven days on, seven off. I won't bore you with that. But it was very, very little time. The supervisor says, Pavelic says, hold on, hold on, hold on. We've got to offer that to everybody. In other words, it's like you can't just cut your own deal with this other guy and then he's going to get that overtime. We've got to offer it. There's a process by which we offer it to everybody because it's a benefit for the other people. So that's the last that Mick hears about it, you see. So he goes back to work, and then all of a sudden, ring, ring, phone calls. We're putting you on suspension, pending investigation. Investigation into what? We're not at liberty to say. So he's on this post. Now he's suspended for several days. They won't tell him what he's on suspension for. No one's told him that a shift swap was going to be a problem. And then several days into the suspension, ring, ring again, you're fired because of the conflict. He's never given an opportunity to propose anything else. And that's the shame because there were other options here that were minimally invasive, if you will. There may even have been other opportunities. The counsel talked about this vacuum test. But, I mean, the truth of the matter is he was never given the opportunity because he didn't know it was a problem. He didn't get to go back to his probation officer or to his own lawyer and say, hey, I'm about to be fired. Can I get some different days off? Is there some other option that I could? I'd say you're right. He sufficiently pled that he has a disability. Yes, sir. You're absolutely right on the law. You're citing that this wouldn't qualify as sufficient interactive process. You still, even that there's a triable issue as to pretext, did they fire him because of this? It still requires a lot of the questions we had was did he make a sufficient request? Yeah. For an accommodation because of his health disability. I think on the reasonable accommodation claim, you're absolutely right because he would have to have made a sufficient request. We think that what he did creates a fact issue for the jury, that the jury would have to decide. On the disability discrimination, the straight-up disparate treatment claim, I don't think that's right. The question is would he have been fired had he not? Right. Well, then the question is is there evidence that this was pretext, that he was fired on account of his condition, not the court-ordered conflict? Right. And that's where I would argue that there is because of the way they compared that they did that for other people. When you say they did it for other people, these are people with court-ordered conflicts? No. No, sir. What I mean by that is I mean other operators in the same position under the same supervision at the same plant, including Mr. Mick himself, who had himself missed work in the past on short notice unrelated to the alcoholism, and they cover him. I mean, they figured it out. All right, counsel. Thank you, Your Honor. Thank you to all three of you for your efforts to help us get this right. We'll take this under advisement. We will take a brief break at this time and hear the last two cases before we depart. I've been told that the students who have, best I can tell, stayed awake back there and are ready to take an exam on the two cases may be leaving at this stage. You certainly are not required to. But if you are, thanks for being here this time. I hope this has been somewhat informative. You don't have much to compare it to, but the two sets of arguments you heard have been very good arguments. This is good work by counsel. The questions may have been confusing from the bench at times, but the counsel did a good job. Good luck to all of you. All rise.